**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHONDA CHAPMAN**, individually, and | : | |
| as the parent and natural guardian of J.D.C., | : | |
| a minor, | : | |
| | : | |
| **Plaintiff** | : | **No. 1:14-cv-00192** |
| | : | |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **PENNSYLVANIA INTERSCHOLASTIC** | : | |
| **ATHLETIC ASSOCIATION, JAMES T.** | : | |
| **ZACK, FRANCIS M. MAJIKES, JAMES B.** | : | |
| **MANNERS, ROBERT A. LOMBARDI, and** | : | |
| **RONALD KENNEDY,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the Court is Defendants' motion to dismiss Plaintiff's complaint (Doc. No. 12).

For the reasons that follow, the Court will dismiss Plaintiff's claims arising out of 42 U.S.C. §

1983 and the United States Constitution.  Additionally, because the Court will decline to

exercise supplemental jurisdiction over Plaintiff's state law claims, it will dismiss the state law

claims without prejudice to Plaintiff's refiling of such claims in Pennsylvania state court.


I.      **BACKGROUND**

Plaintiff in the above-captioned action is Shonda Chapman, individually, and as the

parent and natural guardian of J.D.C., a minor.  (Doc. No. 1-1.)  As of the beginning of the 2013-

2014 school year, J.D.C. is a full-time home-schooled student who resides within the

Susquehanna Township School District.  (Id. ¶¶ 12, 16.)  In September 2013, J.D.C.'s parents

additionally enrolled him in two classes at Covenant Christian Academy, a private school, for

which they paid $500 tuition and a $75 activity fee.  (Id. ¶¶ 13-14.)  Although Covenant

Christian agreed to allow J.D.C. to play on its sports teams, Defendant Pennsylvania

Interscholastic Athletic Association (PIAA) ruled J.D.C. ineligible.  (Id. ¶¶ 20-22.)  Defendant

explained that according to Article III of the PIAA bylaws ("Attendance Rule") a home-schooled

student with less than full-time enrollment in a private school is ineligible to play at that private

school.  (Id. ¶¶ 25-31.)  Rather, according to the PIAA, J.D.C. must play in the public school

district in which he resides.  It appears this determination was based on sections 1 and 8 of the

PIAA's Attendance Rule.  Section 1 provides that:

> To be eligible to participate in an Inter-School Practice, Scrimmage, or Contest, a
> student must be regularly enrolled in a secondary school and in-full time
> attendance, or be homeschooled.  Except as otherwise provided in this ARTICLE,
> a student is eligible only at the school at which the student is enrolled.

(Id. ¶ 40.)   Section 8 elaborates, providing that:

> [S]tudents participating in a home education program under Section 1327.1 of the
> Public School Code of 1949 are eligible at the public schools that the students
> would otherwise attend by virtue of their residences and, for purposes of
> Cooperative Sponsorship of a Sport Agreements, are deemed to be enrolled at the
> public schools that the students would otherwise attend by virtue of their
> residences.

(Id. ¶ 43.)  While J.D.C. is allowed to practice with Christian Covenant, he is not permitted to

play in games.  (Id. ¶ 23.)

On January 31, 2014, Plaintiff filed a civil action in the Court of Common Pleas of

Dauphin County, Pennsylvania seeking declaratory and injunctive relief.  (Doc. No. 1-1.)

Named as Defendants in addition to the PIAA are PIAA board of directors members James T.

Zack, Francis M. Majikes, James B. Manners, Robert A. Lombardi, and Ronald Kennedy.  (Id.)

Plaintiff brings claims arising out of 42 U.S.C. § 1983 and the United States Constitution,

alleging that Defendants' rule prohibiting J.D.C. from competing with the Covenant Christian

basketball team violates the Fourteenth Amendment.  (Id. ¶ 65.)  Specifically, she alleges that it

violates her fundamental right to direct the education of her son, in addition to her right to equal

protection and free exercise.  (Id. ¶ 60.)  She further alleges that she has a protected liberty

interest in the benefits of paying an activity fee to further her child's education without arbitrary

and irrational government interference.  (Id. ¶ 63.)  She also alleges that the actions of the PIAA

were arbitrary and capricious in violation of state law, and that the PIAA did not correctly

interpret its by-laws.  (Id. ¶¶ 10, 56-59.)

On February 4th, 2014, Defendants removed the action to this Court on the basis of

federal question jurisdiction.  (Doc. No. 1.); see also 42 U.S.C. § 1331.  Plaintiff then filed a

"motion for an expedited hearing" regarding her request for a preliminary injunction.  (Doc. No.

4.)  The Court found no basis to grant the motion and denied the hearing.  (Doc. No. 9.)

Defendants subsequently filed a motion to dismiss the complaint for failure to state a claim for

which relief can be granted on February 20, 2014.  (Doc. No. 12.)  The motion is fully briefed

and ripe for disposition.

## II.    LEGAL STANDARD

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

legal sufficiency of the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  In

reviewing a motion to dismiss, a court may "consider only the allegations in the complaint,

exhibits attached to the complaint, matters of public record, and documents that form the basis of

a claim."  Lum v. Bank of America, 361 F.3d 217, 221 n.3 (3d Cir. 2004).  The motion will only

be properly granted when, taking all factual allegations and inferences drawn therefrom as true,

the moving party is entitled to judgment as a matter of law.  <u>Markowitz v. Ne. Land Co.</u>, 906

F.2d 100, 103 (3d Cir. 1990).  The burden is on the moving party to show that no claim has been

stated.  <u>Johnsrud v. Carter</u>, 620 F.2d 29, 33 (3d Cir. 1980).  Thus, the moving party must show

that the plaintiff has failed to "set forth sufficient information to outline the elements of his claim

or to permit inferences to be drawn that those elements exist."  <u>Kost</u>, 1 F.3d at 183 (citations

omitted).

A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions'

when deciding a motion to dismiss."  <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906-908

(3d Cir. 1997).  Although the Rule 12(b)(6) standard does not require "detailed factual

allegations," there must be a "'showing,' rather than a blanket assertion of entitlement to relief. .

. . '[F]actual allegations must be enough to raise a right to relief above the speculative level.'"

<u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 231-32 (3d Cir. 2008) (quoting <u>Bell Atlantic Corp.</u>

<u>v. Twombly</u>, 550 U.S. 544, 555 (2007)).  Put otherwise, a civil complaint must "set out

'sufficient factual matter' to show that the claim is facially plausible."  <u>Fowler v. UPMC</u>

<u>Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678

(2009)).

## III.  DISCUSSION

### A.    Equal protection/free exercise

Defendants argue that Plaintiff's equal protection claim based on free exercise principles

must be dismissed because the challenged bylaw, the Attendance Rule, is facially neutral and

does not burden Plaintiff's right to free exercise.  (Doc. No. 13 at 15, 18-21.)  Therefore,

according to Defendants, the Court should apply rational basis review, and because the rule is

rationally related to a legitimate government interest, it does not violate the United States Constitution.  (Id.)  Plaintiff asserts that the Attendance Rule, as interpreted by Defendants, is not neutral on its face, as "there are no public religious schools," and "the home-schooler who is committed to play in a God-centered environment cannot."  (Doc. No. 14 at 16-19.) Accordingly, Plaintiff argues that strict scrutiny applies, and the law is not narrowly tailored to serve a compelling interest.  (Id.)

As an initial matter, Courts have noted that in considering equal protection and free exercise questions like those brought by Plaintiff, the claims "are functionally identical and it would be redundant to treat them separately."  Trefelner ex rel. Trefelner v. Burrell Sch. Dist., 655 F. Supp. 2d 581, 590 (W.D. Pa. 2009) (quoting Hill v. City of Scranton, 411 F.3d 118, 126 (3d Cir. 2005).  Thus, because the free exercise clause "is the strongest guarantee of the rights at issue . . . the court will only address [P]laintiffs' claims under the free exercise clause."  Id.

The Free Exercise Clause provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]."  U.S. Const. amend. I.  If a law is "neutral" and "generally applicable," and burdens religious conduct only incidentally, the rule is subject to rational basis review and "the Free Exercise Clause offers no protection."  Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 309 F.3d 144, 165 (3d Cir. 2002)  "Under rational-basis review, the challenged classification must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  Angstadt v. Midd-W. Sch. Dist., 377 F.3d 338, 345 (3d Cir. 2004) (internal citations and quotations omitted).  "On the other hand, if the law is not neutral (i.e., if it discriminates against religiously motivated conduct) or is not generally applicable (i.e., if it proscribes particular conduct only or primarily when religiously motivated),

strict scrutiny applies and the burden on religious conduct violates the Free Exercise Clause unless it is narrowly tailored to advance a compelling government interest."[1] Tenafly Eruv Ass'n, Inc., 309 F.3d at 165.

A "neutral" law "does not target religiously motivated conduct either on its face or as applied in practice." Blackhawk v. Pennsylvania, 381 F.3d 202, 209 (3d Cir. 2004). A law is not "generally applicable" if it "burdens a category of religiously motivated conduct but exempts or does not reach a substantial category of conduct that is not religiously motivated and that undermines the purposes of the law to at least the same degree as the covered conduct that is religiously motivated." Id.

The Court finds that the Attendance Rule as applied to Plaintiff is facially neutral and of general applicability. Plaintiff's position that the PIAA's rule is not facially neutral because "there are no public religious schools" is unpersuasive. To the extent Plaintiff asks the Court to conclude that any law distinguishing between public and private schools targets religiously motivated conduct on its face, the Court declines to do so. The Attendance Rule makes no reference to religion or religious worship on its face. See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533 (1993) ("[T]he minimum requirement of neutrality is that a law not discriminate on its face. A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context.")

Moreover, the Court finds that the PIAA's rule is generally applicable. It applies to all

---

[1] "To survive strict scrutiny, a challenged government action must be narrowly tailored to advance a compelling government interest, whereas rational basis review requires merely that the action be rationally related to a legitimate government objective." Tenafly Eruv Ass'n, Inc., 309 F.3d at 165 n.24.

home-schooled children equally, regardless of religious beliefs.  For example, in <u>Combs v.</u>
<u>Homer-Center School District</u>, 540 F.3d 231, 242 (3d Cir. 2008), parents of home-schooled
children brought an equal protection claim, alleging that a law requiring them to comply with
reporting and review requirements violated their sincerely held religious beliefs.  The Court
applied rational basis to that claim, concluding that the law "neither targets religious practice nor
selectively imposes burdens on religiously motivated conduct.  Instead, it imposes the same
requirements on parents who home-school for secular reasons as on parents who do so for
religious reasons."  <u>Combs</u>, 540 F.3d at 242.  This is precisely the case with the Attendance
Rule.  It applies generally to all home-schoolers, regardless of religious belief.  The analysis does
not change and the rule is no less generally applicable just because the rule does not permit
J.D.C. to play sports at his preferred school.  <u>See</u> <u>Bowen v. Roy</u>, 476 U.S. 693, 712 (1986)
("[G]iven the diversity of beliefs in our pluralistic society and the necessity of providing
governments with sufficient operating latitude, some incidental neutral restraints on the free
exercise of religion are inescapable."); <u>Combs</u>, 540 F.3d at 242.

Additionally, the Court finds that any burden the Rule places on Plaintiff's religious
exercise is minimal.  Multiple courts have found that to the extent high school athletics
eligibility requirements may burden religious freedom by ruling students ineligible for
interscholastic  sports at the private religious school of their choice, such a burden does not
offend the Constitution.  For example, in <u>Walsh v. Louisiana High School Athletic Association</u>,
616 F.2d 152 (5th Cir. 1980), Plaintiffs challenged a rule which provided that upon completion
of elementary or high school, a student was eligible to participate immediately only at a high
school within his home district.  If a student matriculated to a school outside of his district, he

was deemed ineligible for one year.  Plaintiffs wished to have their son play sports at a parochial

school located outside of their home district, and challenged the rule.  The Court held that any

burden placed by this rule was "de minimis:"

> The encroachment of the . . .  rule on the free exercise of religion is both limited
> in scope and insignificant in magnitude. The transfer rule does not deny these
> parents or their children the right to actively practice the Lutheran faith.
> Similarly, it neither prohibits a parent from enrolling his child in Lutheran High
> School nor interferes with the ability of such a child to obtain the religious
> education provided by that school.

Id. at 158.  The Court finds Walsh's reasoning sound, and finds that application of the

Attendance Rule does not place a constitutionally intolerable burden on Plaintiff's free exercise.

See also Robbins v. Indiana High School Athletic Ass'n, 941 F. Supp. 786, 792 (S.D. Ind. 1996).

Indeed, the United States District Court of Maine decided a virtually identical case to the

one before this Court in Pelletier v. Maine Principals' Assocation, 261 F.Supp. 2d 10 (D. Me.

2003).  There, Plaintiffs challenged a requirement that home-schooled children must play sports

in the public school district in which they reside.  Plaintiffs, however, sought to have their

children play at a private religious school.  The Court applied rational basis and found there was

no burden on the free exercise of religion.  Id. at 14-16.  The Court wrote:

> The Pelletiers can enroll their children at Seacoast or any other private school
> they choose.  Or they can choose home schooling, as they have.  They can choose
> not to participate in organized athletic programs at all, or to participate on an
> exhibition basis through private schools that will let them.  Or, because the State
> has made the choice possible, they can have their home-schooled children
> participate in the full range of interscholastic athletic programs through their local
> public high school.  With all these choices, Maine has not burdened the Pelletiers'
> free exercise of religion.

Id. at 16.  Although Plaintiff argues that Pelletier is not binding on this Court, it is persuasive

authority, and the Court agrees with its reasoning.  Plaintiff is free to enroll her child at Covenant

8

Christian full-time, and if she does so, J.D.C. is permitted to play interscholastic sports there.

Alternatively, Plaintiff is free to continue home-schooling, in which case her son may play at the

local public school.  The Rule does not burden her free exercise of religion or her right to

worship as she pleases.  See Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 303

(1985) ("It is virtually self-evident that the Free Exercise Clause does not require an exemption

from a governmental program unless, at a minimum, inclusion in the program actually burdens

the claimant's freedom to exercise religious rights.")

Plaintiff relies on Trefelner ex rel. Trefelner v. Burrell School District, 655 F. Supp. 2d

581, 590 (W.D. Pa. 2009) as persuasive authority in support of her claim that the Attendance

Rule violates her right of free exercise.  (Doc. No. 14 at 17-18.)  The Court finds it inapposite.

In Trefelner, a student at St. Joseph's, a private parochial school, challenged a rule that students

must be enrolled at the Defendant public school district in order to participate in extracurricular

activities at the public school.  Prior to attending St. Joseph's, Plaintiff was an eighth-grade

student in the district and had participated in the high school marching band there.  Following his

enrollment at St. Joseph's, Plaintiff still wished to participate in the district's public school

marching band, because St. Joseph's did not have one.  The Court issued a Temporary

Restraining Order compelling the district to permit the student to participate at the public school.

Id.  The Court finds Trefelner is not analogous because, first, the benefit the Trefelner court

found was improperly withheld – eligibility at public school activities – is readily available to

J.D.C. under the Attendance Rule.[2]

---

[2]  The Court also observes that the application of the challenged rule to the Plaintiff in
Trefelner meant that he was unable to participate in any marching band by virtue of his
enrollment at St. Joseph's parochial school.  The Attendance Rule, by contrast, does not serve to

More importantly, crucial to the Court's decision in <u>Trefelner</u> was that although the rule was "facially neutral and generally applicable" at the time it was drafted, the District had granted exemptions over time for home-schooled and charter students, and the ultimate effect of these exemptions was that the <u>only</u> students in the district who were not eligible to play at the public schools were students at private religious schools like St. Joseph's.  <u>Id.</u> at 596.  Indeed, Plaintiff in <u>Trefelner</u> was flatly informed by the district that although it " permit[s] homeschooled and cyber schooled children to participate [in the marching and jazz bands].... [T]he district will not permit parochial students to participate."  <u>Id.</u> at 588.  In other words, these exemptions had the effect of exclusively depriving religiously-affiliated private school students of a benefit provided to all other school-age children in the district: namely, participation in the public school activities.

Plaintiff's situation is distinguishable.  The PIAAs Attendance Rule applies equally to <u>all</u> students not enrolled full-time and does not, as Plaintiff argues, "make[] religious home-schooled students second-class citizens."  (Doc. No. 14 at 18.)  In order to be analogous to <u>Trefelner</u>, Plaintiff would need to allege that the Attendance Rule provides a benefit to virtually all school age children that it deprives to home-schooled children like J.D.C..  But this is not the case.  J.D.C. is eligible to play basketball at the local public school.  While Plaintiff wishes to choose where her home-schooled son may play sports, <u>no</u> children who are home-schooled, whether for religious or secular purposes, have such a choice under the Rule.  The Attendance Rule does not target religious beliefs, and it does not deprive religious home-schooled students

---

exclude home-schooled student J.D.C. from all participation in interscholastic sports.  He may participate by playing with the team at his district's public school.

of a benefit provided to all other students in the district.  <u>See</u> <u>Bowen</u>, 476 U.S. at 708 ("Here

there is nothing whatever suggesting antagonism by Congress towards religion generally or

towards any particular religious beliefs. The requirement that applicants provide a Social

Security number is facially neutral and applies to all applicants for the benefits involved.").

Thus, the Court finds that the Attendance Rule is facially neutral, generally applicable,

and does not deny or burden the Plaintiff and J.D.C. the right to worship as they choose.

Accordingly, the Court will apply rational basis review to Plaintiff's free exercise/equal

protection claim.  However, because Plaintiff has asserted additional grounds in support of her

position that the Attendance Rule requires strict scrutiny – specifically, that the Rule allegedly

burdens the right to direct her child's education – the Court will first address the level of scrutiny

that applies to that claim before analyzing whether the Rule meets rational basis review.

**B.     Fundamental right to direct child's education**

Defendants argue that the Attendance Rule does not infringe on Plaintiff's right to direct

her child's education, and rational basis review applies.  (Doc. No. 13 at 10-15.)  Plaintiff

contends that the Attendance Rule infringes on a parent's right to guide her child's upbringing,

education and religion, and the Attendance Rule must be narrowly tailored to serve a compelling

government interest.  (Doc. No. 14 at 10-16.)

The right to education is not constitutionally protected, but the right of intimate

association extends to "child rearing and education."  <u>Bd. of Dirs. of Rotary Int'l v. Rotary Club

of Duarte</u>, 481 U.S. 537, 545 (1987).  <u>See</u> <u>Pierce v. Soc'y of the Sisters</u>, 268 U.S. 510, 534–35

(1925), (striking down a state statute that "unreasonably interfere[d] with the liberty of parents

and guardians to direct the upbringing and education of children under their control").  For

11

example, in <u>Wisconsin v. Yoder</u>, 406 U.S. 205 (1972), the Supreme Court struck down a law requiring attendance at school until age sixteen as "involv[ing] the fundamental interest of parents, as contrasted with that of the State, to guide the religious future and education of their children." <u>Id.</u> at 232.  However, "[s]tate action that <u>incidentally</u> affects the parent-child relationship is subject to minimum scrutiny, requiring only that the action rationally advance a legitimate government interest." <u>Angstadt v. Midd-W. Sch. Dist.</u>, 377 F.3d 338, 344 (3d Cir. 2004) (emphasis added).

The Court finds that the Attendance Rule does not unreasonably interfere with Plaintiff's right to direct her child's education.  The United States Court of Appeals for the Third Circuit decided a similar matter in holding that athletic eligibility requirements did not interfere with the right to direct a child's education in <u>Angstadt</u>, 377 F.3d 338.  The Plaintiff in <u>Angstadt</u> was a student at a cyber charter school who was denied eligibility to participate in interscholastic basketball competitions because her curriculum and course verification procedures did not meet the various requirements for athletic eligibility.  Plaintiff filed a complaint, alleging in part that "educational choices of the type and nature at issue in this matter are within the scope of constitutionally protected associations and that [the School District's] actions interfere with or chill those rights as exercised by . . . Megan and her family." <u>Id.</u> at 343.  The Third Circuit construed this argument as concerning a parent's right to direct their child's education, and held that "the regulation in question — the requirements placed upon students who wish to participate in interscholastic basketball — does not impact the Angstadts' ability to educate their daughter in the manner they choose.  At best, the regulation's impact on the Angstadts' right to rear Megan is attenuated." <u>Id.</u> at 344.  The <u>Angstadt</u> Court further noted that "[t]here is no constitutionally

protected right to play sports.  Thus the fact that the requirements regulate Megan's ability to play basketball is of no legal consequence."

Plaintiff argues that Angstadt is not controlling here because her family, unlike the plaintiff in Angstadt, have a religious basis for wanting J.D.C. to play sports at Covenant Christian.  Having already concluded that any religious burden caused by the Attendance Rule is minimal and does not run afoul of the constitution, the Court cannot find that Angstadt has no application here.  See Bowen, 476 U.S. at 704 ("Decisions rejecting religiously based challenges have often recited the fact that a mere denial of a governmental benefit by a uniformly applicable statute does not constitute infringement of religious liberty.").  What Plaintiff essentially argues is that the right to guide a child's education also includes the right to be free from any state restrictions as to when and where her child may play interscholastic sports.  However, no court has declared that such a right exists, and such a finding would be directly contrary both to the Third Circuit's holding in Angstadt and to the settled law that there is no constitutionally protected right to play sports.  See Angstadt, 377 F.3d at 344 n.2 ; Palmer v. Merluzzi, 868 F.2d 90, 96 (3d Cir. 1989) ("Participation in extracurricular activities is not a fundamental right.")

Plaintiff relies heavily on Wisconsin v. Yoder, 406 U.S. 205 (1972), which merely serves to illustrate the difference between state action that more than incidentally affects a parent's right to direct her child's education, and the effect of the Attendance Rule.  Yoder concerned a law requiring mandatory attendance at school until age sixteen.  In sharp contrast, the Attendance Rule does not force Plaintiff to do anything.  She is free to enroll J.D.C. full-time at Covenant Christian.  She is free to continue home-schooling.  But the Constitution does not provide a parent the right to demand that a home-schooled child has the unfettered right to play

interscholastic sports at a particular school without restriction.  See, e.g., Dziewa v. Pa. Interscholastic Athletic Ass'n, Inc., No.. 08-5792, 2009 WL 113419, at *4 (E.D. Pa. Jan. 16, 2009) (finding that the PIAA did not violate any constitutional privacy rights in declaring a student ineligible to participate in interscholastic wrestling because the PIAA was not "preventing Plaintiffs from . . .  choosing a particular school for their child.").  The Court is once again guided by the persuasive holding of the District Court of Maine in Pelletier, which rejected an identical argument to Plaintiff's in holding that "Maine's decision to open the public school athletic programs to home-schooled students without at the same time opening the private school programs does not create a burden on parental educational choice." Pelletier, 261 F. Supp. 2d at 14.  Accordingly, the Court will apply rational basis to the Attendance Rule.[3]

C.      **Rational basis review**[4]

Rational basis review is highly deferential, and merely requires that "the action be rationally related to a legitimate government objective."  Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 309 F.3d 144, 178 (3d Cir. 2002).  "Under rational-basis review, the challenged classification must be upheld 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'"  Donatelli v. Mitchell, 2 F.3d 508, 513 (3d Cir.

---

[3]  Defendants further move to dismiss Plaintiff's complaint to the extent it appears to allege that she has a protected liberty interest which is infringed by the Attendance Rule.  (See Doc. No. 13 at 16-18, Doc. No. 1 ¶ 63.)  Plaintiff did not respond to or challenge this aspect of Defendants' motion, and the Court assumes that she does not oppose dismissal of her liberty interest claim.  Regardless, the Court agrees with Defendants that Plaintiff has not alleged an infringement upon any protected liberty interest.  See, e.g., Dallam v. Cumberland Valley Sch. Dist., 391 F.Supp. 358 (M.D. Pa. 1975).

[4]  Because the Court will apply rational basis review to PIAA's interpretation of the Attendance Rule, the Court need not address Plaintiff's argument regarding strict scrutiny.

1993) (quoting <u>FCC v. Beach Commc'ns, Inc.</u>, 508 U.S. 307, 313 (1993)).

In determining whether a decision withstands rational basis review on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "every benefit of the doubt goes to [Plaintiff]" but the Court must grant great deference to [Defendant]." <u>Brace v. Cnty. of Luzerne</u>, 873 F. Supp. 2d 616, 630 (M.D. Pa. 2012) (quotations omitted) <u>aff'd.</u> 535 F. App'x 155 (3d Cir. 2013). <u>See also</u> <u>Wroblewski v. City of Washburn</u>, 965 F.2d 452, 460 (7th Cir. 1992) ("To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classification.")

The Court finds the challenged rule easily passes rational basis review.  <u>See</u> <u>Dziewa</u>, 2009 WL 113419, at *6 ("The PIAA states that its purpose for the transfer rule is to ensure that athletics remain subservient to academics.  This is a facially legitimate reason, and therefore, the alleged classification created is constitutional.")  The rational basis proffered by Defendants and challenged by Plaintiff is that the restrictions set forth by the Attendance Rule are necessary because freedom of choice would allow unfair concentration of athletes at a particular school through students "cherry picking" schools and athletic programs with which to get involved. (Doc. No. 13 at 11-12; Doc. No. 14 at 15.)

Plaintiff's counter-argument – that the Rule undermines its purpose by "concentrating the same set of home-schooled students at one public school" is unpersuasive and unavailing.  (<u>See</u> Doc. No. 14 at 15.)  If the supposed basis for the law is preventing improper "freedom of choice," the attendance rule appropriately and expressly <u>eliminates</u> such choice by forcing students into the public school of their home districts, and is therefore rationally related to the express purpose.  Plaintiff's proposal– that students be eligible at <u>both</u> the public and private

schools within the district – would invite the very problems the Rule addresses; that is, students choosing at which school to play sports, thereby allowing for certain schools to attain an unfair advantage. See United States v. Pollard, 326 F.3d 397, 408 (3d Cir. 2003) ("[U]nder rational basis review, Pollard not only must show that any justifications for the classification forwarded by the Government were not rational, but she also must convince the court that no set of facts rationally could justify the classification.") (emphasis added).  Indeed, the district court in Pelletier already held that this justification for an identical rule clearly passed rational basis, and the Court finds its reasoning is sound.[5]  Although Plaintiff criticizes the rule, it need not be narrowly tailored or impervious to criticism to withstand rational basis review.  See Nichols v. Markell, No. 12-777, 2014 WL 1509780, at *29 (D. Del. Apr. 17, 2014) (internal citations and quotations omitted) (granting motion to dismiss and noting that "while different policy judgments are undoubtedly possible regarding the classification at issue, it is sufficient to find that there exists a reasonabl[y] conceivable state of facts that could provide a rational basis for the classification").

Rational basis review is highly deferential, and Plaintiff has not met her heavy burden, even on a motion to dismiss, to overcome the presumption of rationality afforded to the

---

[5] "Certainly there is a rational basis for the rule. Reasonable people might differ over whether the private affiliation prohibition is essential, or whether a more flexible rule might be written (based on the family residence's geographic proximity to public or private school, for example).  But it is not irrational in the constitutional sense for the [Maine Principals' Association] to be concerned that freedom of choice for home-schooled athletes could lead to unfair concentration of athletes at a particular private school, and that a residence/public school affiliation is the easiest way to enforce recruitment prohibitions."  Pelletier, 261 F. Supp. 2d at 14-15.

Attendance Rule.[6]  See Angstadt, 377 F.3d at 344 (noting that on a motion to dismiss under the rational basis standard, the plaintiffs had the burden of overcoming the presumption of rationality).  Accordingly, Plaintiff's constitutional claims will be dismissed.

Moreover, the Court will dismiss the claims arising out of 42 U.S.C. § 1983 and the United States Constitution with prejudice.  "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court."  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  A Court need not grant leave to amend where amendment would be inequitable or futile.  Id.  Amendment is futile "if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000).  A district court may "properly deny leave to amend where the amendment would not withstand a motion to dismiss."  Centifanti v. Nix, 865 F.2d 1422, 1431 (3d Cir. 1989).

The Third Circuit has affirmed district courts' dismissal of constitutional claims with prejudice under Rule 12(b)(6) upon a finding that a rational basis has clearly been stated and not adequately challenged by the plaintiffs.  See Angstadt, 377 F.2d at 345 (affirming district court's dismissal with prejudice of constitutional claims where Defendants "provide[d] a rational basis for the requirements for participation in extra-scholastic events by cyber-students as well as

---

[6] "Under this minimal standard of review, a classification is accorded a strong presumption of validity and the government has no obligation to produce evidence to sustain its rationality.  Indeed, such a classification can be upheld as constitutional even when it is based on rational speculation rather than on empirical data. Once a facially legitimate reason for the classification is found, whether such a reason was articulated by Congress or not, we must rule the classification constitutional.  As always, when performing such review, our role is not to judge the wisdom or fairness of Congress's policy choices, but rather their constitutionality." Arca-Pineda v. Att'y Gen. of U.S., 527 F.3d 101, 105-06 (3d Cir. 2008).

physical-school students" and the complaint could therefore "not pass the rational-basis threshold"). Additionally, all facts pertinent to the constitutional analysis in this matter are not in dispute,[7] and the complaint does not fail for a lack of factual specificity. See Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 217 (3d Cir. 2013) (upholding district court's dismissal of an equal protection claim with prejudice where (1) the relevant facts were not in dispute and (2) "the claim didn't fail for lack of factual specificity"). Rather, the claims fail because the Attendance Rule satisfies the rational basis standard and no additional fact pleading will change the outcome. See Laudadio v. Se. Pa. Youth Lacrosse Ass'n, No. 08-1525, 2008 WL 1820942, at *4 (E.D. Pa. Apr. 23, 2008) (finding that granting leave to amend would be futile in part because "defendants have put forth a rational basis for the rule . . . the complaint cannot defeat rational basis review"); Nichols, 2014 WL 1509780, at *29 (dismissing equal protection claim with prejudice where there was a rational basis for the classification, the relevant facts were not in dispute, and the claim did not fail for lack of specificity). Accordingly, the Court will dismiss the constitutional claims against all Defendants with prejudice.

## D.     Supplemental jurisdiction

A district court may decline to exercise supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In

---

[7] The Court observes that the parties dispute whether the PIAA correctly interpreted its bylaws. This claim – that the PIAA arbitrarily interpreted its bylaws to exclude J.D.C. from eligibility at Covenant Christian– is a state law claim governed by the standard set forth in Harrisburg School District v. Pennsylvania Interscholastic Athletic Association, 309 A.2d 353, 357 (Pa. 1973). However, this dispute has no relevance to the constitutional analysis, in which the question for the Court was not whether the PIAA properly interpreted its bylaws, but whether a rule providing that home-schooled children are eligible to play sports only at public schools within their district violates the protections provided by United States Constitution. The Court has found that it does not.

exercising its discretion to accept or decline supplemental jurisdiction, a court "should take into account generally accepted principles of judicial economy, convenience, and fairness to the litigants." Growth Horizons, Inc. v. Delaware Cnty., Pa., 983 F.2d 1277, 1284 (3d Cir. 1993). Courts have observed that "the rationale of section 1367(c)(3) is that once the crutch [of the federal question issue] is removed . . . the [state law] issue should not remain for adjudication." Overall v. Univ. of Pa., 393 F. Supp. 2d 341, 342 (E.D. Pa. 2005) (internal citations and quotations omitted).  Moreover, "in this category judicial discretion is a particularly important element." Id.  Typically, when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).  If a district court decides not to exercise supplemental jurisdiction, it should dismiss the state law claims without prejudice.  Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009).

This Court had original jurisdiction over the matter due to the federal questions presented by Plaintiff's claims arising under 42 U.S.C. § 1983 and the United States Constitution. However, as discussed, the Court will dismiss those claims because the PIAA's interpretation of the Attendance Rule does not violate the United States Constitution.  Accordingly, this Court no longer has original jurisdiction because Plaintiff's remaining claims fall under state law.[8]

---

[8] Regarding Plaintiff's additional claims, Plaintiff alleges that Defendants have improperly interpreted the Attendance Rule, and that they acted arbitrarily and capriciously (Doc. No. 1 ¶¶ 10, 56, 58, 59) in denying J.D.C. eligibility.  Plaintiff also argues this Court has the authority to make a non-profit such as the PIAA enforce its bylaws under a contract theory – bylaws Plaintiff alleges the PIAA failed to properly interpret in ruling J.D.C. eligible.  Contract actions arise under state law, as do challenges to the PIAA's decision-making process, which are governed by the standard set forth by the Pennsylvania Supreme Court in Harrisburg School

Because at this early stage in the litigation the parties have not yet engaged in discovery, the Court finds that judicial economy dictates that the Court decline to exercise jurisdiction over the remaining state law claims.   Elkadrawy v. Vanguard Grp., Inc., 584 F.3d 169, 174 (3d Cir. 2009) (affirming the district court's decision not to exercise supplemental jurisdiction because "once the District Court dismissed [plaintiff's] federal claims, leaving only the state claim, the prerequisites for § 1367(c)(3) were met"); Angstadt, 377 F.3d 338, 340-45 n.1, 3.  The Court will therefore dismiss Plaintiff's state law claims without prejudice, so that Plaintiff may re-file in Pennsylvania state court.   Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009) (affirming refusal to exercise supplemental jurisdiction where "the District Court plainly recognized its discretion to retain jurisdiction over [plaintiff's] remaining state-law claims but, having dismissed all of her federal claims, declined to do so").   An order consistent with this memorandum follows.

---

District v. Pennsylvania Interscholastic Athletic Association, 309 A.2d 353, 357 (Pa. 1973). Plaintiff additionally argues that the current version of the law violates the Pennsylvania School Code, but this is similarly not a federal question and does not give the Court original jurisdiction. See Angstadt, 377 F.3d at 340-45 n.1, 3 (affirming the District Court's refusal to exercise supplemental jurisdiction after granting a motion to dismiss the constitutional claims and noting that "whether [the athletic eligibility requirements] violate the Pennsylvania Public School Code is a matter for the state courts to resolve").